Okay, thank you. Mr. Harkness, are you ready to proceed? I am, Your Honor. Okay. Good morning. May it please the Court. My name is Timothy Harkness, and I represent the appellants in the two cases before you. I'd like to reserve three minutes for rebuttal. Okay. Thank you. My clients come before you today because they know that the respondents have evidence in their possession here in the United States that... Pardon me? There's a bit of a feedback there, but no, go ahead. There's a bit of an echo, but what you're hearing is your own voice, I think, and echo, but... Oh, I see. Go ahead. Thank you. I was trying to make sure I was responding to the Court. I'm sure of that. Relates directly to damages suffered by my clients in Germany. Denying them the discovery of that evidence will be a denial of justice because there is no dispute that the discovery is relevant in the German arbitrations. There is no dispute that respondents possess this evidence, and there's similarly no dispute that the arbitral tribunals in Germany are open to accepting 1782 discovery. In both cases before you, the tribunal was asked to order my clients to cease and desist their 1782 requests, and in both cases, those applications were denied. The issue before this Court is what the word tribunal means under 28 U.S.C. checks in 1782. Why shouldn't we, given the recent cert grant in the Supreme Court, why shouldn't we hold this case CAV pending the Supreme Court's resolution of the issue? It seems to me that they're going to have to decide this very issue, and there's a split, as you know, between the Second and Fifth Circuit and the Second, Fifth, and Fourth, and the Sixth. So why shouldn't we, which does not mean you should not continue, obviously you should, but why shouldn't we just hold this CAV? For two reasons, Your Honor. First, and most practically for my clients, waiting to decide this case will be in essence denial of their applications. We have one hearing in one of the cases that it's meant to go, begin in May, and if we can get a resolution here and get discovery, the panel is open to my client presenting that evidence in that hearing. We have another hearing that is one of the other proceedings is going to go to an annulment proceeding in Germany, I believe in January, and the evidence may be relevant in that proceeding as well. So waiting for the Supreme Court to rule would in essence be denying our clients' applications. That's the first thing. The second thing is I do believe that the Supreme Court would benefit from the circuit split. The way that circuit splits get resolved is obviously either Congress intervenes or the Supreme Court says something, and I think that the Sixth Circuit and Fourth Circuit opinions clearly are, we believe, the superior decisions, particularly the Sixth Circuit, which gives such a detailed textual analysis, and I believe that the Supreme Court would benefit from this panel's view as well. I don't know what else you see. So there'll be a number of cases decided, we hope, in the next month or so. But practically speaking, this would be a denial of our applications at this court. Why would it be a denial? I don't know. Let's assume that we rule one way and allow you to proceed, and that tribunal means what your friend on the other side argues that it means, and the Supreme Court steps in and disagrees with us. Wouldn't that have the practical effect of basically vacating our decision, even though they may not formally issue a remand? I'm not sure, Your Honor. I think that given the narrowness of the request at hand, if we could, we get a decision from this court, we should be able to, that affirms, that reverses the lower court decision, and grants the 1782 discovery that we've requested. There's no reason why we couldn't actually- But it would mean the district court would have no jurisdiction. If we were to say that, okay, tribunal means what everybody thinks it means, it means tribunal. And this thing about the antecedent and all that stuff is overthinking the case, and I haven't talked to my colleagues about that, but it seems to me that's exactly what happens here. The courts are overthinking it. Tribunal means tribunal. And yeah, it might mean a governmental agency. It may not. That doesn't mean it's ambiguous any more than saying a cat is ambiguous because it includes both male cats and female cats. A cat's a cat. But that's just my view, and you need another vote here. But we would rule the other way. Mr. Harkness, wouldn't we also, Mr. Harkness, wouldn't we also need to, if we agreed with you, wouldn't we need to send this back to the district court to have them evaluate the intel factors? That's a good point. Yep. Your Honor, the simple answer is no. It is within your authority to look at the intel factors because they're fundamentally not indisputable and grant relief. I can't cite to a case where a court has done it in the 1782 context, but certainly circuit courts do have the authority to decide when there is no essential issue before to decide below. There may be a factual issue in terms of one of the intel factors. The timing of the filing was, I think, four months out. Does that create an issue under the intel factor in terms of whether or not the parties delayed filing in order to interfere with the process of 1782? No, Your Honor, because here the arbitral panels in both instances were apprised of the 1782 applications, made adjustments to the schedule, and specifically allowed the 1782 applications to proceed. So there is no factual interference and there's no dispute about that. The orders are in the record before the court. But would the district court have jurisdiction? That's what I was starting to ask. If we were to say that tribunal means tribunal, the district court would disagree with us and say it only refers to some kind of a governmental or public agency and go the way of the Fifth Circuit. When the district court gets that, it seems to me if the Supreme Court comes down and disagrees with us, the district court has to be aware of the fact that there no longer has jurisdiction and obviously that can be raised at any point. It just seems to me it creates a very unwieldy process if we were to go ahead and rule without the Supreme Court stepping in. Well, Your Honor, I think that what I'm trying to say is that if you were to rule in our favor without a remand, this would be resolved before the Supreme Court decides anything. And if you were going to rule with a remand, even so, unless the court sits on it below for quite some time, there would still be a practical decision made at the district court level before the Supreme Court rules. At the end of the day, an application like this is very much akin to a Rule 45 subpoena. And so Rule 45 subpoenas don't take that long to litigate. If the court allows us to proceed, we can meet and confer with the other side. We have a narrow set of requests. We're looking for a narrow set of documents that's clearly defined. So this does not have to be a month-long discovery exercise. This is fairly discreet. Now, my colleagues on the other side may disagree about the temporal objections that they pose. But those are the kinds of things that lawyers deal with in Rule 45 subpoenas every day. And with Mr. Harkness, let me ask you a question here about the tribunal. I know the dictionary definitions, whether they be, whoops, I'm getting some feedback. Let's see here. Let me try this a second. Yeah, there's an echo there. I'm going to have to deal with the echo. I know the dictionary definitions are somewhat all over the board as to what a tribunal is. But how do I get away from the fact that when I look at the word tribunal, I'm thinking of something tangible. I'm thinking of a court. I'm thinking of an institution. I'm thinking of a commission. I'm thinking of something. I'm not thinking necessarily about a process where a group of arbiters may get together under the term arbitration association. Well, I really have two responses, Your Honor. First, the DIS, which is the organization here, much like the UNCATROL entity that was referenced in the Chevron case where this circuit said was unquestionably within the 1782 ambit, are organizations that administer arbitrations all the time. So that's the first thing. The second thing is I would commend the Bostock decision in the last term of the U.S. Supreme Court where the court held that when Congress chooses not to include an exception to a broad rule, courts apply the broad rule. At the end of the day, as Judge McKee rightly pointed out, the word tribunal is a broad phrase. And what Congress has shown in its amendment of this statute and many others is that when it wants to have a limitation, it knows how to put one in. Here, it didn't do that. In fact, it took limitations out during the amendment process in 1964. It may be your strongest argument. There was amendments in the fact that it broadened court and replaced court with tribunal and asked your friends, how do we look at that amendment and come to the conclusion that in doing that, they weren't intending to broaden it beyond the official designation that my colleague suggests comes to his mind when he thinks of the term tribunal? Well, that's exactly right, Your Honor. And that's why we included in our briefing, not just dictionary definitions, but the definitions that this court, the Supreme Court, and courts really for hundreds of years have used the way they've used the word tribunal. And we believe that when you look at the word tribunal and its common everyday usage, even as that usage existed in 1964, the Supreme Court is very clear that what we're supposed to do is apply that common sense agreed term. And if there needs to be a limitation, then Congress can impose it. If there needs to be a policy discussion, then Congress can have it. It's really not for litigants to decide policy questions. It's really for Congress to do that. And we believe that what Congress did in its amendment 1964 was choose a purposefully broad word to describe tribunal. And so here we are. We believe that it clearly applies. I see my time is nearly at an end until I have rebuttal time. So I reserve the remainder of my time for rebuttal unless the panel has any other questions. I have none. Judge Portage, Judge Fischer, anything else? No. Okay, Mr. Harkness, thank you very much. Mr. Buchholz, I believe you're leading off. Go ahead. I'm sorry, Judge McKee. No, go ahead. I just said I believe you're leading off for your side. Thank you, Your Honors. May it please the Court, Jeffrey Buchholz from King & Spalding. I represent Halliburton Company. I'll be arguing the common issues across these two cases to respond to Mr. Harkness. And then Mr. Crane, who represents Baker Hughes, will follow me in order to address any issues that may remain or are specific to the Baker Hughes. Why am I wrong in my conversation with your colleague, Mr. Harkness, in suggesting that when I look at what the Court did in removing the term, what Congress did, removing the term court in the statute and replacing it with tribunal, that they had to intend something like the issue here. And it seems to me that tribunal means an arbitration panel. My guess is, and I have not done this, I was tempted to ask my daughter, who's a lawyer, something like the following. Is a panel that convenes under the Federal A.V. Arbitration Act to engage in an arbitration that is derived that pursuant to the Federal A.V. Arbitration Act. And the Supreme Court, of course, didn't decide the specific question presented here. The Supreme Court answered Your Honor's question, Judge McKee. The Supreme Court, this is at page 258 of the opinion, says Congress understood that change, that change meaning the change from the prior version of 1782, which used the term any judicial proceeding, to the current language, foreign or international tribunal. Congress understood that change to provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings refers to proceedings in governmental bodies and not really private decision-making bodies like the D.I.S. arbitration here. And it's that sentence, Your Honor, what the Supreme Court cited for that sentence is the Senate report from 1964 from the enactment. And I'll get to the Senate report in a second, but I think it's also a very important part of the context here from what the Supreme Court meant, excuse me, in terms of what Congress meant. Give me that slide again that you were reading from. I just pulled up the... Page 258 in section B, opinion, the second paragraph there. The Supreme Court starts, maybe I should go back a step. The Supreme Court starts with describing what Congress did in 1958 when it enacted a statute creating this commission. And again, this is a statute, a bit of legislative history. This is a public lie, public lie 85-906 from 1958. Congress said exactly what its purpose was. This is, again, a statute, not me trying to infer what Congress' purpose was. Congress says in section two of that statute, as the Supreme Court notes in this section of the opinion and tell, the purpose of a commission was to study cooperation between the United States and foreign countries. That's one significant part of what that statute says. Between the United States and foreign countries very strongly suggests that Congress is focused on foreign governmental bodies and not private ones. And then later in that same paragraph, section two of that 1958 statute, Congress says that the commission is to study and work on improving procedures for the rendering of assistance, foreign courts, and quasi-judicial agencies. Again, quasi-judicial agencies refers to, as Judge Fischer was suggesting, you know, something governmental and official and not simply a private dispute resolution. And so the Supreme Court in the foretell on 258.1 and 258.7 and 258.8 quotes that very same provision that I just read, Your Honors, from the 1958 statute, and then goes on to say section 1782 had previously referred to any judicial proceeding and that the Rules Committee's draft, which Congress adopted, replaced that with a proceeding in a foreign or international tribunal, the language that we need to construe here today. And then the Supreme Court says, and so this is the Supreme Court speaking, not me, Congress understood naturally to provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings abroad. Now, while you're reading from that case and what the Supreme Court said, they do quote, they do quote Professor Smith that says, C. Smith, in international litigation, the term tribunal includes investigating magistrates, administrative, and arbitrable tribunals. So, you know, intel takes us a couple different directions. You can't just hang your hat on what Congress instructed the commission in 58. And Smith is just not a law professor who wrote an article. He was also the reporter for the commission. Yes, and Judge Fischer, let me try to explain why I think intel really does all point in the same direction, including this quote from Professor Smith. So the quote in full, although, you know, some courts have seized on the use of the words arbitral tribunals, Professor Smith doesn't say arbitral tribunals in isolation. He says the term tribunal includes investigating magistrates, obviously a governmental body, and quasi, excuse me, I'm sorry, investigating magistrates, administrative, and arbitral tribunals. So he doesn't refer to arbitral tribunals by themselves, let alone specify private. He says administrative and arbitral tribunals in context that also connotes governmental bodies, especially when followed by investigating magistrates and quasi-judicial agencies as well as conventional, civil, commercial, criminal, and administrative courts. In the context of the discussion, though, they were clearly dealing with a governmental tribunal. And that's the argument you make is not without some force. But given the context in which intel arose, clearly the Supreme Court was focusing its discussion on what was before, and that was, without dispute, a governmental tribunal. And it seems to me, if you're right, the Congress could very easily, when they took out the term court, they could have replaced it not with tribunal, but with governmental tribunal, or official tribunal, or some word to cabin the term of interpretation. They didn't do that. They didn't do that. Well, Congress could always be clearer. But I think when the court looks, I'm sorry, let me go back a step and answer the first part of your Honor's question. I'm not suggesting that intel squarely decided. But the Supreme Court and intel found the 1964 Senate report to be an important, reliable guide to interpreting Section 1782. And when the court goes and looks at that particular quote from it, the Supreme Court reproduced an intel, but that entire section of the Senate report in context, which by the way, is the very same page of the very same Senate report that Professor Smith is quoting, excuse me, is citing in the article that the Supreme Court quoted him for. So all of this ends up in the same place. The Senate report, this is page 3788 of the USCAN version the Supreme Court is citing. In describing the revision to 1782 from any foreign language, the court says, the word tribunal is used to make it clear that assistance is not confined to proceedings before conventional court. For example, it is intended that the court have discretion to grant assistance when proceedings are pending before investigating the magistrates. And then the court, then the report is in view of the constant growth of administrative and quasi-judicial proceedings all over the world, the necessity for obtaining evidence in the United States as impelling before an administrative tribunal or quasi-judicial agency as in proceedings before a conventional foreign court. It's perfectly clear that what the Senate report is talking about is governmental bodies. That's the very part of the Senate report the Supreme Court in intel relies heavily on. And that Professor Smith is quoting in the snippet of his article that the Supreme Court quoted. But I also want to point your honors to two other very important indicators from the context here and actually not just context but text about what Congress meant in using the words foreign or administrative tribunal in 1782. The first is of course 1782 itself. So Congress not just doesn't just use those words in the first sentence but then just a couple lines below in the very same provision 1782a, Congress says the quote which may be in whole or part the practice and procedure of the foreign country or the international tribunal. Well international tribunals which you know cross countries may have their own practice and procedure established by treaty but the practice and procedure of the foreign country refers to foreign tribunal and only it doesn't necessarily have to refer to an international tribunal. Well right your honor I think international tribunal is distinct from foreign means the tribunal created by treaties between countries right. And so a treaty between countries that creates a tribunal normally specified practically for that tribunal which wouldn't be any one country's practice and procedure because it's international right. So here we're really talking about foreign tribunal as opposed to international and foreign tribunal then refers to practice and procedure of the foreign country. So Congress clearly understands that foreign tribunal as it's using that term will mean a governmental body because only governmental bodies have the practice and procedure of the foreign country. The DIS arbitration doesn't follow the German code of civil procedure. It follows its own rules of practice just as private arbitration forums around the world do. That's 1782 itself. And then the other important very important and I think the seventh circuit's recent decision does a very good job explaining that. I know we submitted a 28j on that the decision came out after our brief was filed. I think Chief Judge Sykes's opinion in that in that recent seventh circuit case is both concise it doesn't overthink the issue and addresses all of the key issues in a way that's clear and I think it makes it makes this point. And then it also makes the same point about 1781 that I'd like to make now which is when Congress enacted 1782 as part of the same bill it also significantly amended 1781 as a result of the same report by the same commission that was for the same mission in 1888. So this is all of a piece. No one I don't think in all the decisions here has suggested that foreign or international or you know in 1782 to mean something different from what it means in 1781. That would really be in 1781 is about transmittal of letters rogatory or requests and it talks about the state department authorizes the state department to transmit letters rogatory or requests from foreign or international tribunals to the appropriate tribunal officer or agency in the United States or vice versa transmitting to the appropriate tribunal officer or agency in the foreign country. And there's a number of things about 1781 that make clear again I correctly pointed out that this is about a comedy between government. The state department's role here is the first significant clue. The state department is of course our government's representative vis-a-vis other countries not private bodies and the state department has this role that Congress provided because Congress is talking about interactions between countries just as Congress said in 1958 in the first place that it was interested in cooperation between the United States and foreign bodies. And the references in 1781 foreign or international tribunal officer or agency also Congress is talking about governmental official bodies. And when you take 1782's reference to the practice and procedure of the foreign country together with 1781's clear indications that it ignores the natures of of letters rogatory which by definition implicates some kind of an official governmental authority. And I'm not sure that that is very helpful and I understand your argument we can't look at 1781 divorce it from 1782 with the same term applies but I'm not so sure that's correct because of the very specific sui generis nature of letters rogatory and what they are. Well your honor I guess what I would say about that is 1781 and the senate report explains this as well refers to letters rogatory and requests because the the senate report explains Congress recognized that some countries might do things a little differently and might not technically call things letters rogatory. And so if something was functionally the same as a letter rogatory but but not called that Congress wanted to capture that as well and um you know the stick it says I'm wrong about this the thick circuit says well 1781 is not which everyone understands are only between governments but also requests and anyone can make a request well I guess anyone can make a request but the state department is not in the business of dealing with requests and 1781 in addition to referring to the state department by talking about governmental interactions also uses the terms repeatedly officer or agency which further make clear that it's talking about and so I think even though the nation uses requests to capture things that aren't technically letters rogatory Congress isn't talking about in 1781 using the same language as in 1782 interactions between governments and again no one has suggested in the dozens of read about 1782 and my friend on the other side hasn't suggested that this court should interpret 1782 means something different from what it is in 1781. I also want to point your honors to our communications and intel that the Supreme Court understood Congress to be focused on interactions between governments so I read your honors the part of you know which is there's a there's a feedback there which is making it difficult to hear can we just stop this clock from running for a second and that's just okay I've been noticing that I believe it's coming from Judge Porter if you don't mind judge if I could mute yours just to check it out and see if that's what it is. Sure it's really copy what you're observing I'm sorry I'm sorry that Mr. Buchholz's presentation for me anyway is very choppy there there are long stretches where his face is yeah I believe your connection is a little bad you got cut off right now I'm very sorry I hope your honors can see and hear me yeah I can see you're fine it was a bit garbled for a bit but I could understand your argument but I want to make sure that Judge Porter is able to hear us and see us okay yeah maybe you're able to reconnect reconnecting yeah I stopped the argument okay you're not being penalized for this so your clock has stopped you have managed to freeze time like sure song yeah connect and reconnect you try doing that but I have noticed there is a feedback like right now I'm speaking and I still see the clock sliding up over yours Judge Porter try to mute your try to mute your audio he's also breaking up the yeah he is I don't know if he wants to disconnect and reconnect for what it's worth for my end I I can see and hear everyone clearly except Judge Porter who is who is breaking up when you're speaking right now are you getting feedback now no no we're not you did mute his Judge Porter when you need to speak obviously you would unmute yourself um yeah I think I would just say that's better now that uh Judge Porter has muted his audio right yeah okay maybe between arguments we can have him reconnect them yeah we'll do that all right I'll start the clock for Jeffrey okay I'm very sorry Mr. Buckles go ahead oh that we're all I'm doing the best I can under these uh these circumstances I appreciate everyone is I appreciate the court's indulgence I just wanted to point your honors to a couple of other indications in intel where the Supreme Court again reinforces the point that Congress is talking in 1782 about interactions between governments about about governmental proceedings so the court says this is on page 264 of the opinion in uh in Roman 4 uh section 4 um the court says as the 1964 senate report the same one that we were discussing earlier suggests a court presented with the 1782 request may take into account the nature of the foreign tribunal the character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. judicial assistance the receptivity of the foreign government or the court or agency abroad shows the Supreme Court is talking about and thinks Congress was talking about uh governmental bodies and then later in that same paragraph you know well there's nothing there's nothing to say that when they used the word agency they weren't referring to our arbitral bodies I think that's stretching those words a bit too far well I mean your honor I think normally the the most common meaning of agency would have some connotation of an official body not a truly private one and I'm not sure I'm undecided as to whether I want to call the German Arbitration Institute a tribunal but I would be less undecided if you were asking me is it an agency okay well then let me move on to what the Supreme Court says later in the same paragraph which is that a district court under 1782 can consider whether a 1782 request uh circumvents foreign proof gathering restrictions or other policies of a foreign country or the United States and so like the language about the practice and procedure of the foreign country in 1782 itself the Supreme Court here is clearly understanding Congress to have been talking about uh governmental bodies and not purely private ones so that's all but that's an intel um before I run out of time and I want to make sure that Mr. Crane has time to address any any other issues I also wanted to point to one other important issue here which is the interpretive principle that courts are supposed to interpret Congress's statutes to fit harmoniously together and not to conflict with each other and um as the Seventh Circuit again I think does a good job of explaining there would be a significant conflict with the Federal Arbitration Act here if 1782 were interpreted as my friend on the other side asks the court to do um Federal Arbitration Act section 7 puts the the arbitrator in charge not a party of discovery and it limits enforcement of any discovery order to the district where the arbitrator is sitting and 1782 of course is much broader it's the full civil discovery and it's not where the arbitrator is sitting it's where the party that the discovery is being sought from can be found and because the New York Convention applies to foreign arbitrations and and the FAA by virtue of section 202 applies to the New York Convention excuse me to the New York Convention arbitrations so foreign arbitrations like this one like these in this case are governed by the New York Convention and the FAA applies to New York Convention arbitration so is a court supposed to apply section 7 and the rest of the FAA to an arbitration that's governed by the New York Convention which is what the FAA says or 1782 which is a very different regime and the Seventh Circuit again explains that this conflict there's no reason to think Congress intended to abrogate the FAA that would have been a big deal Congress wouldn't have done that without somehow noticing that it was doing that that would be a major step you don't assume that Congress would take that inadvertently would just sort of stumble into that kind of a conflict and there's no indication in any of the contextual materials from the context of 1964 or 1958 to suggest that Congress in any way was thinking about private arbitrations and my friend on the other side you know criticizes us for relying on legislative history we're not relying on legislative history in the sense of taking a floor statement by one legislature and saying that's what the act should as opposed to what some other legislators said in the sense that courts have rightly criticized what we're doing is we're pointing out what the Supreme Court in intel thought Congress meant and it's I would submit that if the Supreme Court thinks that the 1964 senate report is an important and reliable guide to interpreting 1782 that it's not appropriate for this court to just disregard it as you know it seems to me there are two ways of going at this we could look to the legislative history determine there's an ambiguity and then rely upon the legislative history to resolve the ambiguity but the Supreme Courts have told us and our precedent is that we don't even get to the legislative history unless we first find an ambiguity so you're suggesting that the court in intel looked at the legislative history to determine whether or not there was an ambiguity in the term tribunal but that would be contrary to the Supreme Court's own instructions about how we go about interpreting statutes you know maybe they found ambiguity first and if they did then that would be helpful to know well your honor I didn't mean to suggest that the Supreme Court looked at the legislative history in order to decide whether the statute was ambiguous I agree with with your honor the Supreme Court has said you're not supposed to do that but I think I mean Supreme Court by a lopsided majority did what it did in intel and and whatever that however you want to characterize that method it's it's not an illegitimate method if it's what the Supreme Court did in the most on point case here but actually I think you know another way of looking at it is um is when you when the way that I would would suggest looking at this is you don't really even have to look at the senate report in 1782 itself in the reference to the practice and procedure of the foreign country and 1781 which is not legislative history that's a statute and the 1958 statute which again is not legislative history it's a statute all of those very strongly point to the conclusion that congress was focused only on governmental bodies and not purely private ones like the arbitration here if the court thinks that the word tribunal notwithstanding all of those contextual indicators remains ambiguous well then it would be entirely appropriate to look at the legislative history and we know that it's appropriate to look at because the the Supreme Court did so and it relied heavily on it and all of those factors point in the same direction and the interpretive canon which again is distinct from legislative history that you're supposed to avoid conflicts between statutes and read them harmoniously as opposed to in conflict that also points in the same direction because of the conflict I was just describing involving the federal arbitration act so I again I think all of these factors point in the same direction and I'm not asking the court to rely on legislative history as distinct from from the enactment context which I think is is more strongly supportive uh of our position um before uh we run out of time I want to make sure that well you're actually out of time maybe just take a sentence and wrap up thank you your honors yeah so again for all these reasons I think whether you look at the text or the context or interpretive canons or legislative history or all of the above as the Supreme Court did they all point in the same direction Congress had no intent in changing any judicial proceeding to foreign or international tribunal to reach purely private dispute resolution proceedings Congress instead was very clearly focused only on governmental bodies and there's no dispute here that the arbitrations are in purely private dispute resolution forums not governmental bodies therefore the court should affirm both of these cases thank you very much your honors thank you Mr. Buckles and again I apologize for that interruption Mr. Crane thank you can I ask how much time I have Judge McKee um before uh Stephen Crane begins his argument I don't know if Judge Porter wants to disconnect and reconnect or try that they want to try to reconnect you can hear me Mr. Crane I think you've got seven minutes thank you and you know uh a guillotine blade will not sweep down and behead you at the end of six minutes and 59 seconds but just so you're cognizant of the well they're nicer than the fifth circuit yeah if Judge Porter is not going to to try to reconnect I'll start and really we can hear us Dave can you hear us okay just nod because you're muted he's also frozen I'm not sure you can hear yeah no I know can you try calling him Patrick I don't believe I have his number but I can message him real quick Judge Porter can you hear us right now he can't yeah try reconnecting he's back to frozen you want me to get out and come back in again please yes yeah yes I'm leaving now okay it proves once again that uh connectivity is not quite as good in Allegheny County as it is could you imagine if you and L2 know what would be going on you know it's ironic we had an argument in July was one of the litigants in Pakistan and it was flawless it was perfect there was no interruption no pausing no echoes of audio was clear it made a huge believer um out of me of this forum today is a little bit troublesome hi Judge Porter hi Judge Porter okay so I have a little bit of feedback but hopefully this connection is a lot better I think we're gonna there we go if Judge Porter is muted I guess this has rearranged the judges on my screen it has yeah all right last shall be first and the first shall be last shall we proceed go ahead Mr. Crane yes so uh good morning and may it please the court my name is Stephen Crane I represent Baker Hughes Baker Hughes adopts in their entirety the arguments made by Mr. Buchholz in Halliburton it's not my intent to repeat Mr. Buchholz argument regarding the correct reading of section 1782 instead in my few minutes I want to focus on the practical implications of reading 1782 liberally to encompass private arbitrations really touching on the last couple of points that Mr. Buchholz was was talking about the conflict between the FAA and 1782 if it's if it's construed as Mr. Harkness would like it construed and really I want to focus on why the Baker Hughes case N. Ray Storag illustrates in the words of the Intel court in interpreting 1782 in another context if there was such a sweeping change intended in the law when Congress was enacting liberalizing amendments to 1782 Congress would have included statutory language to the effect that private arbitrations were intended to be included there's no such language in the statute and the legislative history which every court of appeals has considered never mentions private arbitration from the empowering act in 1958 creating commission the promulgation of the law in 1964 not one mention not even in passing of private arbitration my points are also made in part to address what the Intel court identified as the twin aims of the changes to 1782 first to provide efficient assistance to participants in international litigation and second to encourage foreign countries by example to provide similar assistance to our courts that's the international litigation what's that isn't this international litigation no sir no sir it's not international litigation litigation by its term encompasses proceedings before a court and is distinct throughout where do you where do you find that definition uh I think you're making some good points but I don't know that I don't know that I'd try to get into defining the term litigation well your honor I I think from the context in which the the twin aims arise which is in terms also derivative of the empowering act to the commission and the report of the commission and the language ultimately used litigation is intended to um include uh encompass state actions and that is also reflected in the second of the twin aim which would not make sense in the context of private arbitration the second of the twin aims is to encourage foreign countries by example to provide reciprocal assistance to our courts that second point can be answered readily there it's impossible or virtually impossible for a private arbitration uh tribunal or panel to meaningfully by example or otherwise encourage foreign countries to provide similar assistance to u.s court you know in 1964 the the prevalence of private arbitration was clearly much less than it is today uh you know why isn't this a bostock type situation uh where in bostock and the provision that uh your friend uh mr harkness referred to said without an exception you shouldn't narrowly construe the word well I think uh Mr. Buchholz has answered that question which is if you look to the text of of the statute itself if you look to the text of 1782 itself by virtue of the fact uh that uh in it incorporates the practice and procedure of the foreign country the answer is itself it's itself in the text as to what foreign tribunal means so I think even under a bostock if you're if you have a purely textual analysis here um you get to the answer uh that it does not encompass uh private private arbitration if you and in fact if you look at the six circuits analysis which is the most directly textual attempt to try to say we'll look at nothing else given though that they did consider every policy argument and they did consider all legislative history they get to a best reading not the only reading so I think I think two things one it's difficult that that that case there was very similar to this it was a private commercial arbitration in Dubai was it not it is it is very similar and it is one of the two why shouldn't we why shouldn't we follow the sixth as opposed to the seventh because the seventh is a better reasoned uh opinion it's not it's not as similar of an entity I don't think there's I don't think there's a great deal of difference in there's some difference though there there is some difference and I suppose if we were you know that suggests there's some gradation within the notion of international uh or sorry foreign tribunal such that you really have to take a very deep dive into the structure of the tribunal the structure of the of the arbitration regime and that's certainly not suggested in any way shape or form by by the language used by congress in 1782 but if you're right that it's limited to some kind of official tribunal doesn't that force that very same inquiry we have to do a deep dive into the composition of the tribunal the nature of it even if it's given birth to by private contract arguably it could still be of a governmental tribunal it triggers the same inquiry seems to me I don't I don't think that's necessarily there there's an inquiry trigger Judge McKee but it's not a difficult inquiry which is to say that if you look for example at intel and it's a view of the DG uh tribunal in that circumstance that the the intel court went to great lengths to point out that that is an agency an arm really the uh antitrust enforcement of the european union european union it is by its nature governmental and there is a chasm of difference between an entity like that and an entity like exists all over the world at all times which is a private contracted for arbitration among litigants overseeing in some in some way by a procedure that parties have agreed to but not overseen in any way shape or form by a governmental entity which is precisely the case in this instance and in the other instances before the other courts of appeals my time is up I would if I have 30 seconds like to make just a quick point go ahead and that is to go to the actual import of an expansion of view it it destroys two key factors uh key elements of private arbitration one is the notion of of uh that our our our matters will be confidential and two that our matters be efficient in our case the case begins with storag filing a 337 page award from a previous arbitration that was in every way shape and form supposed to be confidential the parties contracted for that negotiated for that and relied upon that and that that document is now public just echoing into the efficiency point the fight and our judge did not get to the intel factors and I do not believe they're before the court and I believe if y'all rule on the intel factors y'all be the first court of appeals to do that neither the uh fourth the sixth the ninth of the seventh the seventh or the second have done that when when confronted with whether they should but as the efficiency point the amount of time and money spent fighting only on confidentiality demonstrates that uh to apply the statute private arbitrations would in fact open up a chasm uh or open up a a bucket of issues that congress in no way could have contemplated uh in any sort of casual interpretation of 1782. Mr. McCain, thank you very much. Mr. Harkness, you had some time reserved for you. I do, thank you. I'm going to do a very quick saunter through a lot of points that were raised. Number one, a quick procedural point as we put a point out in the storag opening brief at page 10 both tribunals here have to act in accordance with the civil procedural code on arbitration in Germany so there is a civil a statutory uh code that's being applied here and I would commend page 10 of the story brief um I my uh colleague spent a bunch of time on intel um but I would like to cut through it uh first I would commend justice Scalia's uh concurrence in the intel decision which is only two paragraphs long he uh addresses I think quite properly the role of legislative history in this case but on at the end of the day intel stands for a few different propositions first broad terms should be applied broadly um just as in bostock that's what the intel court did number two courts should not construe tribunal to categorically exclude certain proceedings again that's what the intel court did um when we're talking about the senate report uh which is a dubious uh application in this particular context I would point out a few things first all of the kinds of provisions that my colleague pointed to were examples they were for instances they weren't categorical definitions here you had the rules commission beginning in 1958 and finally enacting a congress and the president enacting a statute in 1964 certainly things could have moved around the idea that a legislative body six years after a pronouncement in 1958 would have had a very narrow reading in mind it's just not credible it is a bostock uh kind situation as judge fisher fisher noted let me spend one minute on um the textual uh reading if I may first of all 1782a that third clause that uses the word the foreign country um I think properly read as the sixth circuit did the phrase guides the district court's discretion and prescribing practices and procedures and nothing more it doesn't limit the application of 1782 explicitly and it doesn't do so by implication the seventh circuit really offers no reasoning when it concludes that this language supports the respondents reading of the statute it merely pronounces it and the sixth circuit actually wrestles with it in a cogent analysis which I would commend to the court um first then I'd like to turn a bit to 1781 it's again our reading is to the way we're suggesting it is uh completely consistent and the sixth circuit again in the ALJ decision uh response to that let's talk about the FAA for one moment if we could we allowed mr queen to go a bit over so go ahead but just try to keep it brief okay thank you very much there is no conflict the FAA does not apply to this case there's no way that section 7 is a discovery um ability of the litigants in this uh these two tribunals if there's an enforcement proceeding section two might um but but the FAA does not um does not apply here there is no conflict and I think that this um when courts like the seventh circuit suggest that there is it shows a misunderstanding of the ways the different sections I think that the argument is that the your interpretation would give uh one broader discovery rights under 1782 than you would have under the FAA yeah that's that's right that's right and intel that's absolutely right and intel says that kind of comparative analysis is not appropriate if if there's going to be a balancing of different uh discovery obligations or rights that's for congress to decide and that doesn't mean that there's a conflict finally I would like to end where uh my colleagues in Storag ended um and I think it really points to the whole problem of conflict and the whole problem with their approach to the case is that this is a creature of contract as their own lawyer in Germany pointed out if they didn't want 1782 discovery they could have put that in the arbitration provision they didn't there's an easy fix to all of the consternation in the policy issues that were raised I think that if the district courts um approach to confidentiality in both cases shows us anything it's that judges in the district courts take confidentiality seriously and in one of the cases appointed a special master to make sure that things were handled appropriately consistent with law and the expectations of of uh the parties so again this is something that contractually can be dealt with you don't need a court or congress to solve the kind of issues that that uh yeah I would also assume that uh and I can't I think Mr. Buchholz made some very sound arguments and I obviously started out very firmly in your corner Mr. Harkness and can often discuss this case and give you one more vote but you know Mr. Buchholz his arguments are they have some force but let me just mention it would seem to me to the extent there's any issue with disclosure and they're always protective orders in the district court is more than equipped unless I'm missing something to handle those kinds of issues because those are the kinds of issues that come up normally in the course of any uh discovery dispute so that's I don't find particularly helpful that's exactly right and that's what happened here we made stealing motions when we made our uh applications and when one of the district courts uh one of the judges had um some questions about it appointed a special master and went through the whole thing we made sure that confidentiality was protected yeah thank you gentlemen I'm glad the transcript to be uh obtained you can speak with with Patrick uh about the process for that and that you split the cost of the transcript I want to thank you for a very excellent argument it's always a pleasure to be part of a panel argument where there are three really good attorneys very very forcefully and articulately um and cogently uh making arguments to us it's particularly helpful when they can not just make the arguments but cite to something to back up the arguments because we hear good arguments all the time they're backed up by nothing in fact we have a case coming up later on I think that that's what we're going to hear but so this has been very refreshing and um hopefully I'll have the pleasure of uh hearing you folks maybe not in the same configuration at least individually uh back in our court again but thank you very much for your argument hold on I think David um Patrick wants to have a conversation to try to clear up some of the problems technologically that um that you might be having um thank you very much let's just take the case under advisement